## Changes in County Classification

PACKEL, Attorney General, June 28, 1974.—Former Commissioner of Elections James A. Green requested our opinion as to the procedure to be followed in certifying a seventh class county's advance in classification to the sixth class when it exercises its option to so advance pursuant to section 210(6) of the County Code of August 9, 1955, P. L. 323, as amended, 16 PS §210(6). Section 210(6) provides that sixth class counties are:

"[T]hose having a population of 45,000 and more but less than 95,000 inhabitants and those having a population of 35,000 and more but less than 45,000 inhabitants which by ordinance or resolution of the Board of County Commissioners elect to be a county of the sixth class."

The option for counties with a population of 35,000

but less than 45,000 was added to section 210 by the Act of September 9, 1971, P. L. 458 (No. 107).

Prior to Act No. 107 of 1971, advancement in classification was always automatic for any county whose population, based upon the decennial United States Census, had increased sufficiently to warrant placing it in a higher class. The procedure governing this advance in classification is set forth at section 211(b) of the County Code, 16 PS §211(b):

"Whenever it shall appear by any such census, that any county has attained a population entitling it to an advance in classification . . . as herein prescribed, it shall be the duty of the governor, under the great seal of this Commonwealth, to certify that fact accordingly, to the board of county commissioners on or before the first day of October of the year succeeding that in which the census was taken or as soon thereafter as may be, which certificate shall be forwarded by the commissioners to the recorder of deeds and be recorded in his office."

The change of class becomes effective "on the first day of January next following the year in which the change was so certified by the Governor": 16 PS §211-(c).*

Based on the results of the 1970 Census, seven counties qualified to exercise the option accorded by the Act of 1971 to become sixth class counties. Tioga and

---

* Although section 211 of the County Code imposes these duties upon the Governor, the Secretary of the Commonwealth obtains the census information and accordingly prepares the county classification certificate for the Governor's signature, pursuant to section 703 of the Administrative Code, 71 PS §243, which reads:

"The Secretary of the Commonwealth shall:

"(c) Keep the seal of the Commonwealth, and affix it to all public instruments to which the attestation of the Governor's signature now is or may hereafter be required by law."

Huntingdon Counties each passed resolutions in 1971 electing to become sixth class counties, and shortly after each so notified the Commissioner of Elections, the Governor certified the reclassification of sixth class status.

Bedford County passed a resolution on August 22, 1972, electing to become a sixth class county, but heretofore has not so notified the Department of State, and the Governor has not certified its reclassification. Elk County passed a similar resolution on November 2, 1973, and notified the Department of State on February 4, 1974, and by so doing raised the whole question of proper certification procedure. The Governor has consequently not yet certified the change in status of Elk County.

Three counties, Clarion, Clinton and Greene, qualified to exercise the option, but have not done so.

Because Act 107 failed to delineate the exact procedures to be followed by a county which desires to exercise the option, the above circumstances raise the following questions:

1. May a county lacking the requisite population according to a decennial census nevertheless change its classification during a decade if it finds that its population has risen above 35,000?

2. May a qualified seventh class county exercise its option at any time, or is it bound to act in accordance with the time frame established in section 211(b)?

3. Is certification by the Governor required to effectuate the purpose of section 210(6)?

4. What are the present classifications of the seven counties whose population according to the 1970 Census entitled them to sixth class status?

In the absence of any language to the contrary in Act 107, section 210(6), 210(7) and 211 of the County Code must be read in pari materia. Section 1932 of

the Statutory Construction Act of November 25, 1970, P. L. 707 as amended, 1 Pa. S. §1932, instructs that "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or the same class of persons or things," and, therefore, are to be construed together. Section 210 mandates the nine classes of counties in the Commonwealth, and section 211 prescribes by what reference those classes shall be established and the procedure by which a change in classification shall be accomplished.

The language of section 211(a), which was drafted to deal with the automatic reclassification of counties, is broad enough to encompass the more fluid circumstances arising out of a county's exercise of its option under section 210(6). The standard of county classification is population size, and the one uniform measuring rod that applies to all counties is the decennial census. Moreover, section 211(a) is unqualified in its requirement that county classifications "shall be ascertained and *fixed* according to their population by reference from time to time to the last preceding decennial United States census." (Italics supplied.) To be sure, a county's population will change in the course of a decade, but for classification purposes, it is fixed by the census. Only in this way can the General Assembly legislate consistently with regard to any given county from one decennial census to the next. Accordingly, a county is not entitled by section 210(6) to sixth class status if it acquires the requisite population *after* the census has been taken.

However, we are of the opinion that section 210(6), rather than section 211(b), governs the procedure by which a seventh class county exercising the option may acquire sixth class status. Section 211(b) is directed to the more frequent circumstances where the sole criterion for advance in classification is the attainment

of the requisite population as measured by the decennial census. The certification of the governor is automatic, and constitutes the final imprimatur of change.

For seventh class counties having a population of 35,000 or more but less than 45,000, the General Assembly has seen fit to provide another procedure: that of local ordinance or resolution. This procedure conflicts with that prescribed by section 211(b), and requires reference to section 1936 of the Statutory Construction Act, 1 Pa. S. §1936, which states:

"Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail."

Since Act 107 was enacted in 1971, while section 211(b) became law much earlier, in 1955, the provisions of section 210(6) must control.

Moreover, unlike section 211(b), which requires the certification process to be completed by the first day of October of the year following the census, no such restriction is present in section 210(6). In providing the option to certain seventh class counties, the General Assembly apparently concluded that the decision of whether or not to exercise the option warranted more time than was allotted by section 211(b), and should be available without restriction as to time. Accordingly, a county which is qualified to exercise the option provided by section 210(6) is not limited as to when that option must be exercised, and it may pass the appropriate ordinance or resolution at any time during the ensuing decade. As an administrative matter, once such a county exercises its option, it should notify the Department of State so that prior records indicating seventh class status may be brought up to date.

Our conclusion is supported by Pennsylvania case law. In Commonwealth ex rel. Woodring v. Walter,

274 Pa. 553, 555-56, 118 Atl. 510, 512, the Supreme Court held that:

"* * * [C]hanges in classification are not permissible until there has been a legal ascertainment of the fact of increase (citing cases) . . . In some instances the way in which this shall be determined is expressly designated, as by a certificate of the governor in case of cities affected by a change in population (Act of May 8, 1889 P.L. 133), and similarly in the case of counties, since the passage of the Act of July 10, 1919, P.L. 887. Some other method may be provided by law, as by a local tabulation."

For all other counties, except those entitled to exercise the option, the Governor's certification constitutes the legal ascertainment of the fact that they are entitled to, and are accordingly granted, an advance in classification. With regard to counties exercising the option, the requisite legal ascertainment is accomplished by the ordinance or resolution of the Board of County Commissioners.

The above reasoning applies as well to the applicability of section 211(c) regarding the effective date of the change in classification. While section 210(6) is silent as to effective date, section 211(c) refers back to section 211(b) and provides:

"Changes of class ascertained and certified as aforesaid shall become effective on the first day of January next following the year in which the change was so certified by the Governor to the county commissioners."

Since ascertainment of the classification change at issue is carried out pursuant to section 210(6) and not section 211(b), that portion of section 211(c) dealing with the effective date of change conflicts with section 210(6) and cannot be said to control. In the absence of any other statutory provision determining the effective date of a change under the option provision, we

are constrained to follow the holding of the Supreme Court in Commonwealth ex rel. Woodring v. Walter, supra, which held that "any change becomes effective only as of the date when it is officially ascertained": 274 Pa. at 557, 118 Atl., at 512. Under section 210(6), therefore, the change in classification of a county exercising the option becomes effective on the date that the ordinance or resolution effectuating such a change is passed.

In light of the foregoing, the status of the seven counties enumerated above is as follows:

(1) Tioga and Huntingdon Counties are sixth class counties, having both passed the resolution required by section 210(6).

(2) Similarly, Bedford and Elk Counties are sixth class counties, the effective dates of the changes in classification being August 22, 1972, and November 2, 1972, respectively, the dates on which the respective resolutions were passed.

(3) Clarion, Clinton and Greene Counties remain seventh class counties. However, under the above analysis, these counties retain the right to exercise the option afforded them by section 210(6) at any time prior to the publication of the next decennial census.

In conclusion, it is our opinion, and you are hereby advised, that changes in county classification pursuant to section 210(6) of the County Code are subject to the provisions of section 211(a) of the code but not governed by the procedures delineated by sections 211(b) and 211(c). Such changes in classification are implemented by ordinance on resolution of the Board of County Commissioners, effective upon passage, and may take place at any time subsequent to the publication of one decennial census and prior to the publication of the next.